**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

PRE-PAID LEGAL SERVICES, INC.,   )
                                                 )
      Plaintiff,                         )
                                               )
vs.                                                      )   Case No. CIV-05-0875-F
                                               )
ERIC WORRE,                     )
                                               )
      Defendant.              )

## ORDER

Several motions are before the court. They are: "Defendant's Motion to Certify Questions of State Law to Oklahoma Supreme Court" (doc. no. 50); "Defendant's Motion for Summary Judgment" (doc. no. 36); and "Pre-Paid Legal Services, Inc.'s Cross-Motion for Summary Judgment" (doc. no. 37). All motions have been fully briefed and are ready for determination.

### I. Background[1]

This action alleges breach of a non-solicitation of employees and associates clause which is contained in an agreement entitled "Debt Restructure and Settlement and Security Agreement." All three of the motions which are currently before the court address the enforceability of two provisions in this agreement, the non-solicitation clause and the default clause.

The agreement, often referred to in this order as a settlement agreement, is between Pre-Paid and Mr. Worre. It settled disputes between those parties which arose after Pre-Paid fired Mr. Worre and terminated the marketing services agreement which Mr. Worre had entered into with Pre-Paid and which provided that Mr. Worre

---

[1]This background information does not constitute formal fact-findings. Its only purpose is to provide context.

would be an independent contractor to Pre-Paid. Pre-Paid brought a lawsuit against Mr. Worre (Case No. C-03-511, in the District Court of Pontotoc County, Oklahoma), which ultimately resulted in the settlement agreement that is now in issue in this action. Pursuant to the terms of the settlement agreement, Mr. Worre delivered a new promissory note payable to Pre-Paid in the amount of $1,382,247 plus interest. The amount of the new note equaled all principal and unpaid but accrued interest owed by Mr. Worre to Pre-Paid under previous notes held by Pre-Paid on which Mr. Worre was the obligor.

In this action Pre-Paid alleges breach of the non-solicitation clause contained in the settlement agreement and invokes the default provision, seeking damages in the amount of the outstanding note balance ($1,440,437.57 at the time the Complaint was filed) plus interest and injunctive relief. Mr. Worre moves for summary judgment, arguing that the provisions in the agreement which Pre-Paid seeks to enforce are unenforceable as a matter of law because they violate the public policy of the State of Oklahoma. Pre-Paid moves for summary judgment, arguing that the contract provisions challenged by Mr. Worre's motion are enforceable and that the fact of Mr. Worre's breach is undisputed.

This order first addresses the motion to certify, then addresses Mr. Worre's motion for summary judgment and then Pre-Paid's motion for summary judgment.

## II. Mr. Worre's Motion to Certify

Mr. Worre asks the court to certify two questions to the Oklahoma Supreme Court concerning the effect of 15 O.S. 2001 §§ 217 and 219A on the non-solicitation clause. The settlement agreement states that it is governed by the laws of the State of Minnesota, the state of Mr. Worre's residence at the time of the agreement.

(Agreement, Article V, ¶ 5.5, p. 12.)[2] Mr. Worre argues, however, that Minnesota law would hold the non-solicitation clause enforceable while Oklahoma law would hold the non-solicitation clause a violation of Oklahoma public policy, with the result that Oklahoma law governs and with the further result that the non-solicitation clause is void.  Mr. Worre further argues that as the question of whether a non-solicitation of employees clause violates § 217 or § 219A is an issue of first impression in Oklahoma, this court should certify questions concerning the effect of those statutes on the non-solicitation clause to the Oklahoma Supreme Court.  Pre-Paid objects to certification, arguing that Minnesota law governs and that the issue is otherwise inappropriate for certification.

A motion to certify asks the trial court to seek an answer from the Oklahoma Supreme Court regarding a question of Oklahoma law as to which there is no controlling Oklahoma decision, constitutional provision, or statute.  20 O.S. 2001 § 1602.  The decision to certify lies within the discretion of the trial court.  *Id.*  As set out in other parts of this order, the court finds and concludes that Minnesota law, not Oklahoma law, applies to this dispute. Accordingly, certification to the Oklahoma Supreme Court is inappropriate.  Moreover, even if the court had concluded that Oklahoma law governed, it would decline to certify the questions presented by Mr. Worre.  As posed by Mr. Worre, the questions are confusing, and it is unnecessary to seek guidance regarding the issues presented.  The motion to certify should be denied.

### III.  The Parties' Cross-Motions for Summary Judgment

#### A.  Standards

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and

---

[2]The agreement is attached to Mr. Worre's motion for summary judgment as Exhibit 2, and it is attached to Pre-Paid's cross motion for summary judgment as Exhibit 1.

that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

## B. Undisputed Facts

Applying these standards, the court finds and concludes that the content of the "Debt Restructure and Settlement Agreement and Security Agreement" (the settlement agreement) between Pre-Paid and Mr. Worre is undisputed.

## C. Choice of Law Rules

Where jurisdiction is based on diversity as it is here, the substantive law of the forum state, including that state's choice of law rules, apply. Moore v. Subaru of America, 891 F.2d 1445, 1448 (10th Cir. 1989) applying Oklahoma law, citations omitted. Here, the parties chose Minnesota law to govern their contract. (Agreement, Article V, ¶ 5.5, p. 12.) In Oklahoma, the law of the state chosen by the parties to govern their contractual rights and duties will be applied unless the law of the chosen state would be contrary to a fundamental policy of the State of Oklahoma. *See*, Moore, 891 F.2d at 1449, citing Oklahoma authorities and quoting the Restatement

(Second) of Conflict of Laws § 187, "Law of the State Chosen by the Parties"; Williams v. Shearson Lehman Brothers, Inc., 917 P.2d 998, 1002 (Okla. Civ. App. 1995) (parties' contractual choice of law should be given effect as written unless something in the record demonstrates otherwise). Thus, there is a two-step process to determine whether the parties' choice of law will be honored. The court looks first to the law of the chosen state, Minnesota, and determines whether Minnesota would enforce the contracts; if it would, then the court looks to the law of the forum state, Oklahoma, and determines whether enforcing the contract via Minnesota law would violate Oklahoma public policy. *Id*. With this framework in mind, the court takes up each of the motions for summary judgment.

### D.  Mr. Worre's Motion for Summary Judgment

Defendant Mr. Worre moves for summary judgment in his favor, arguing that the non-solicitation clause in the settlement agreement violates the public policy of Oklahoma so that the clause is void and unenforceable in this state. Mr. Worre also argues that the default provision in the settlement agreement is a penalty provision and is void in this state as a matter of law. Both of Mr. Worre's arguments depend upon a preliminary finding that Oklahoma law governs the settlement agreement.

#### 1.  The Non-Solicitation Clause

Pursuant to the above-stated choice of law rules, the court must determine whether the non-solicitation clause would be enforced under Minnesota law, and if it would be, the court must then determine whether the clause violates the public policy of Oklahoma.

Neither party has cited any Minnesota decisions which address the enforceability of contractual provisions that prohibit solicitation of employees or

associates by a company's former employee.[3]  As discussed later in this order, the court finds and concludes that a clause which prohibits solicitation of a company's employees is not a clause which restrains trade or which constitutes a covenant not to compete.[4]  Nevertheless, it is a clause which, like a non-compete clause, applies following an employee's termination of employment and which restricts the employee from engaging in certain types of conduct following termination, ostensibly to protect the former employer's legitimate business interests.  Therefore, given the lack of Minnesota decisions regarding clauses which restrict solicitation of employees, the court looks to Minnesota decisions regarding the enforceability of agreements not to compete for guidance as to how the Minnesota courts would approach a determination regarding the enforceability of the non-solicitation clause in issue here.

Minnesota applies its version of a reasonableness test to agreements not to compete.  *See*, Klick v. Crosstown State Bank of Ham Lake, Inc., 372 N.W.2d 85 (Minn. Ct. App. 1985) (reasonableness test applied to agreement of a former employee not to go to work for any bank within the appellants' trade area, including branch offices of any institution which had a branch office in appellant's trade area, for three years; provision held unreasonable with respect to area and duration and therefore

---

[3] The court understands that Mr. Worre was an independent contractor for Pre-Paid, and that the clause in question pertains to non-solicitation of independent contractors, sales associates, or employees of Pre-Paid. All of these classes of relationships are intended to be encompassed by the court's references in this order to employers and employees, or to matters involving employment or employment contracts.

[4] Mr. Worre cites two decisions from other states which have, in different circumstances, reached another conclusion. Communication Technical Systems, Inc. v. Densmore, 583 N.W. 2d 125 (S. D. 1998); Dyson Conveyor Maintenance, Inc. v. Young & Vann Supply Company, 529 So.2d 212 (Ala. 1988).  Even if this court agreed with those decisions that the non-recruit clauses in issue in those cases were restraints of trade (which it does not), those cases are distinguishable. In those cases the non-recruit clauses effectively kept the employees from working in their trade or profession anywhere in the state due to the lack of other employers in that trade.  *See,* Communication Technical Systems at 128; Dyson at 214.

unenforceable; trial court could have, but in its discretion chose not to, blue pencil the contract). Specifically, a restraint of competition is valid in Minnesota where it is entered into for a just and honest purpose, for the protection of a legitimate business interest of the party in whose favor it is imposed, reasonable as between the parties, and not injurious to the public. *Id.*, citing Bennett v. Storz Broadcasting Co., 134 N.W. 2d 892, 898 (Minn. 1965); *see also*, Webb Publishing Company v. Fosshage, 426 N.W. 2d 445, 450 (Minn. App. 1988) (considering reasonableness of non-compete restrictions and remanding for consideration of the appropriate scope of the restraint). Although the court in Klick declined to blue pencil the contract before it in order to make the contract more reasonable in geographic scope and duration, that court stated that it had the power and discretion to modify the contract or not, depending upon equitable considerations and the particular facts of the case. *Id*. at 88-89.

The non-solicitation clause in issue here appears in Article I of the parties' settlement agreement, at ¶ 1.6(b)(i), p. 5. The provision states as follows.

> Non-Solicitation. For a period of five (5) years after the Termination Date, [Eric Worre] shall not directly or indirectly through another entity, knowingly:
>
> (i) solicit, induce or attempt to induce any employee or vested sales associate or independent contractor of the Company to leave his or her employment or service or in any way interfere with the relationship between any such employee, sales associate or any independent contractor....

Minnesota law recognizes that employers have a legitimate interest in protecting themselves against the deflection of trade or customers by the employee, by means of an opportunity which the employment has given the employee. Webb, 426 N.W.2d at 450, citation omitted. The non-solicitation clause in issue here protects Pre-Paid from Mr. Worre's attempts to deflect trade or customers away from Pre-Paid

by recruiting, contacting, soliciting, or otherwise interfering with Pre-Paid's relationship with its current employees or vested sales associates or independent contractors so as to induce those individuals to leave their employment or service with Pre-Paid and go to work with Mr. Worre. The non-solicitation clause protects Pre-Paid's legitimate business interests in retaining its employees and its employees' customers and business.

The duration of the settlement agreement is five years. Although the court does not have undisputed facts before it which would allow it to decide, at this stage, whether or not this duration is reasonable or unreasonable as a matter of law, Minnesota law provides the court with the power to blue pencil the duration of the agreement to cure any unreasonableness which might ultimately be shown. *See*, Klick, 372 N.W. 2d at 88-89. The same is true with respect to the currently unlimited geographic scope of the agreement. *Id.*[5] The same is also true regarding Mr. Worre's argument that the clause is unreasonable because it keeps Mr. Worre from soliciting all Pre-Paid employees and associates, including individuals who began work for Pre-Paid after Mr. Worre was terminated.

Mr. Worre also argues that the non-solicitation provision is too broad because it not only keeps Mr. Worre from soliciting Pre-Paid employees, it precludes conduct which "in any way interfere[s] with the relationship between any such employee" and Pre-Paid. That language does not keep an individual who has previously worked for Pre-Paid but has left that employment, from going to work for Mr. Worre. Moreover, assuming for purposes of argument only that the language is overly broad because it would not allow Mr. Worre to hire employees who come to him of their own accord,

---

[5]The court notes that Minnesota courts have held that territorial limitations may be irrelevant when considering the enforceability of a non-solicitation of customers covenant. Dynamic Air, Inc. v. Bloch, 502 N.W. 2d 796, 800 (Minn. App. 1993).

an interpretation which Pre-Paid rejects,[6] then Minnesota law allows judicial clarification or narrowing of the language.

The court finds and concludes that the Minnesota courts would apply a test no stricter than the reasonableness test which Minnesota applies to non-competition clauses, in order to determine whether the non-solicitation clause in issue here is enforceable. As a general proposition, the non-solicitation clause meets this test because the clause is for a just and honest purpose for the protection of Pre-Paid's legitimate interests, because the clause is reasonable as between the parties, and because the clause is not injurious to the public. Although the record is not sufficient to allow the court to now decide the reasonableness of the scope of the clause in the particular respects mentioned above, the court finds that in the circumstances of this case there is no reason why any such problem with the scope of the clause could or should not be corrected by invoking the blue pencil doctrine. Accordingly, the non-solicitation clause is enforceable under Minnesota law.

This determination requires the court to next consider whether the non-solicitation clause violates the public policy of Oklahoma. The answer to that question depends upon whether the clause is a disallowed restraint of trade under 15 O.S. 2001 § 217 or § 219A.

Title 15 O.S. 2001 § 217 is entitled "Restraint of trade." It provides as follows.

<u>Every contract by which any one is restrained from exercising a lawful profession, trade or business of any kind</u>, otherwise than as provided by Sections 218 and 219 of this title, or otherwise than as provided by Section 2 of this act, is to that extent void.

---

[6]Pre-Paid states that it has never attempted to enforce the non-solicitation clause to prohibit employees from joining Mr. Worre on their own accord and that the clause is clearly not intended to restrict Pre-Paid employees from choosing to leave on their own accord. (Plaintiff's reply brief, p. 6.)

(Emphasis added.)

By its terms, § 217 applies only to contracts "by which any one is restrained from exercising a lawful profession." Agreements not to compete are contracts which restrain an individual from exercising a lawful profession and so they come under scrutiny under this provision as agreements in restraint of trade. As previously mentioned, however, the clause in question here is not an agreement not to compete. The clause does not keep Mr. Worre from competing against Pre-Paid and it does not restrain trade by prohibiting Mr. Worre from exercising his lawful profession. In fact, quite the opposite is the case; it is due to the apprehension that Mr. Worre would, in fact, continue to exercise his profession and trade in competition with Pre-Paid, that the clause was deemed necessary and was bargained for[7] with an eye to keeping Mr. Worre from recruiting Pre-Paid's employees and sales associates during the course of that competition with Pre-Paid.

In short, the court declines to read § 217 any more broadly than its terms provide. It finds and concludes that § 217 applies only to contracts that restrain an individual from the exercise of a lawful profession, for example, to non-compete type agreements. As the non-solicitation clause is not a contract in restraint of trade, it is not a clause which is subject to §217 and it is not a clause which is void as against Oklahoma public policy under that statute.[8]

---

[7] It is clear that the provision at issue here was a bargained-for term of the settlement between the parties (*see,* ¶¶ 2,3 of Defendant's Statement of Undisputed Material Facts, doc. 36, at 2), at least in the sense that the restrictive language was not boiler plate language in a standard form which was presented to Mr. Worre as a *fait accompli*. See, *e.g.*, Continental Federal Savings and Loan Ass'n v. Fetter, 564 P.2d 1013, at 1019 (Okla. 1977).

[8] Alternatively, if 15 O.S. 2001 § 217 were held to apply because the non-solicitation clause is a restraint of trade, Oklahoma only invalidates unreasonable restraints under § 217. Bayly, Martin & Fay, Inc. v. Pickard, 780 P.2d 1168, 1171 (Okla. 1989). (Although Bayly and the Oklahoma decisions cited there precede the enactment of § 219A, the court finds that § 219A does not change the fact that only unreasonable restraints of trade are disallowed under § 217 or § 219A.) For the
(continued...)

The other statute which Mr. Worre argues voids the non-solicitation agreement is 15 O.S. 2001 § 219A. Section 219A is entitled "Noncompetition agreements." Subsection A of § 219A provides as follows.

> A. <u>A person who makes an agreement with an employer...not to compete with the employer after the employment relationship has been terminated</u>, shall be permitted to engage in the same business as that conducted by the former employer or in a similar business as that conducted by the former employer as long as the former employee does not directly solicit the sale of goods, services or a combination of goods and services from the established customers of the former employer.

Subsection B of § 219A provides:

> B. Any provision in a contract between an employer and an employee in conflict with the provisions of this section shall be void and unenforceable.

(Emphasis added.) Thus, § 219A only applies to a person who "makes an agreement with an employer...not to compete with the employer after the employment relationship has been terminated." The court has already concluded that the non-solicitation clause is not a non-compete clause. Accordingly, § 219A, by its own terms, does not apply, and the non-solicitation clause is not void under § 219A as a violation of Oklahoma public policy.

---

[8](...continued)
same reasons that the court states later in this order that the non-solicitation clause is reasonable under Minnesota law, the court also finds that the non-solicitation clause is reasonable under Oklahoma law, were Oklahoma law to apply. *See*, <u>Loewen Group Acquisition Corp. v. Matthews</u>, 12 P.3d 977, 980 (Okla. Civ. App. 2000) citing <u>Tatum v. Colonial Life & Accident Ins. Co. of America</u>, 465 P.2d 448, 451-52 (Okla. 1970). The non-solicitation clause protects Pre-Paid's legitimate interests and it keeps Mr. Worre from taking advantage of opportunities or business advantages that Mr. Worre gained directly from his employment with Pre-Paid. *See*, <u>Loewen</u> at 982. If the geographic scope or duration of the clause were to be found unreasonable under Oklahoma law, Oklahoma allows the court to judicially modify the scope of the clause when this can be done, as it could be here, without requiring material judicial alternation of essential terms. *See*, *id*.

Moreover, § 219A(B), the subsection which actually voids non-conforming clauses, only applies to a contractual provision "in conflict" with §219A(A). Section 219A(A) provides that employees shall be permitted to engage in the same business as the former employer so long as the former employee does not solicit sales *from the established customers* of the former employer. The non-solicitation clause in issue here concerns non-solicitation of employees, not customers. The clause is not in conflict with § 219A(A) and it is therefore not void under § 219A(B).

Accordingly, Mr. Worre's motion for summary judgment based on his argument that the non-solicitation clause violates Oklahoma public policy should be denied.

## 2. The Default Provision

Mr. Worre argues that the default provision in the settlement agreement is unlawful and unenforceable under both Minnesota and Oklahoma law. The default provision is found in Article I of the Debt Restructure and Settlement and Security Agreement, Article I, ¶ 1.4(a) at p. 3. It provides as follows.

> Default. If any of Worre's representations and warranties in this Agreement are inaccurate or if the Company gives notice to Worre of his failure to comply with his obligations under this Agreement, and such failure (if curable) is not cured to the reasonable satisfaction of the Company within 15 days of such notice, an "Event of Default" shall occur and, subject to Section 1.5 hereof, all amounts remaining due and payable to Company under the Debit Balance and the New Note shall immediately upon demand by Company become due and payable. This Section contains and defines the only Events of Default that can trigger acceleration.

Again, the initial question is whether Minnesota or Oklahoma law governs the validity of this default provision, a question which is answered by considering the viability of the default clause under the law of Minnesota, and if Minnesota would hold the clause viable, then by considering the viability of the clause under Oklahoma

law. *See*, Moore, 891 F.2d at 1449 (a court sitting in Oklahoma will not apply another state's law if that other state's law is contrary to the law and public policy of Oklahoma, the state of enforcement).

Mr. Worre's moving brief does not address the law of Minnesota with respect to the enforceability of the default provision. Instead, Mr. Worre's brief jumps to the argument that Oklahoma would find the provision to be an unenforceable penalty. Even with respect to Oklahoma law, however, Mr. Worre's brief admits that "no Oklahoma decisions address illegal penalty provisions in a non-compete/non-recruitment agreement such as this Agreement." (Defendant's moving brief, p. 10.) Mr. Worre's brief then goes on to discuss authorities from Wisconsin and Arizona, both of which are distinguishable as neither involved any security for, or restructuring of, a debt already owed. Mr. Worre's response brief filed in opposition to Pre-Paid's motion for summary judgment does discuss Minnesota law. That brief argues that Minnesota, like Oklahoma, will *not* enforce a provision in a contract which operates like a penalty, quoting Gorco Construction Co. v. Stein, 99 N.W. 2d 69, 74 (Minn. 1959). (Worre response brief, p. 14.) Gorco held liquidated damages for breach of contract void as a penalty where there was almost no evidence of any reasonable relation between the liquidated damages amount and the pecuniary losses resulting from the breach, although damages were readily susceptible of definite measurement and proof. *Id*. at 483-84.

Here, the title of the settlement agreement itself--"Debt Restructure and Settlement and Security Agreement"--gives notice that it is an agreement which, as a part of the settlement of all disputes between the parties, restructures and secures an existing debt owed by a former independent contractor to the company. As detailed in the agreement, and as Mr. Worre agrees (in his moving brief at p. 12), "[t]he $1.4 million dollar judgment Pre-Paid is seeking...is the accrued balance of pre-existing

-13-

loans [from Pre-Paid] to Worre." These facts are evident from the face of the settlement agreement. The court finds and concludes that the amount of the new note was determined by the amount of the existing indebtedness plus interest, and that it is not a penalty.

Mr. Worre has presented no authorities which suggest that this type of default and acceleration provision is an illegal penalty which Minnesota would uphold but which Oklahoma would find violates public policy. Accordingly, Minnesota law governs this provision, and Mr. Worre's argument that he is entitled to summary judgment because the default provision is unenforceable as against Oklahoma public policy is incorrect. Mr. Worre's motion for summary judgment with respect to this issue should be denied.

### D. Pre-Paid's Motion for Summary Judgment

To the extent that Pre-Paid's motion for summary judgment asks the court to declare that the non-solicitation clause and the default provision are enforceable under both Minnesota and Oklahoma law, the court agrees for the reasons set forth above with respect to these issues. To this extent, Pre-Paid's motion should be granted.

To the extent that Pre-Paid's motion seeks summary judgment on all other issues, the court finds that there are disputed issues of material fact which preclude summary judgment in Pre-Paid's favor. For example, Mr. Worre's affidavit states that he has not improperly contacted any of Pre-Paid's associates, employees or independent contractors; that he has not used information provided to him by Pre-Paid while he was associated with Pre-Paid to contact any Pre-Paid associates; and that he has not breached or violated the settlement agreement in any way. Accordingly, to the extent that Pre-Paid's motion seeks judgment in its favor on the ultimate issues for trial, Pre-Paid's motion should be denied.

### III. Rulings

Defendant Eric Worre's motion to certify is **DENIED**.

Defendant Eric Worre's motion for summary judgment is **DENIED**.

Plaintiff Pre-Paid Legal Services, Inc.'s cross-motion for summary judgment is **GRANTED** in part and **DENIED** in part.  Pre-Paid's motion is **GRANTED** to the extent that the court declares that Minnesota law governs the parties' agreement and that the non-solicitation of employees clause and the default clause are generally enforceable.  Pre-Paid's motion is **DENIED** to the extent that the motion seeks adjudication of the merits in Pre-Paid's favor on all issues.

The court qualifies the above rulings with one caveat.  As explained in the body of this order, the reasonableness of the scope of the non-solicitation clause with respect to certain matters, remains to be determined.  Those matters include the duration and geographic reach of the non-solicitation clause, whether the clause precludes hiring Pre-Paid employees who were hired by Pre-Paid after Mr. Worre was terminated, and whether the clause precludes Mr. Worre from hiring Pre-Paid employees who come to him on their own accord.  These are challenges which, if pressed by Mr. Worre at trial, may cause the court to invoke the blue pencil doctrine to cure any unreasonableness which may be established by a preponderance of the evidence.  This order is not intended to express any view of the court with regard to these discrete issues of scope, and nothing stated in this order constitutes the law of the case with respect to these issues.

Dated this 3rd day of November, 2006.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

05-0875p005(pub).wpd